{¶ 98} I concur with the majority on the supplemental assignments of error but in judgment only on the original two assignments.
 {¶ 99} I regret that the majority opinion has quoted so extensively from State v. Ellison, Cuyahoga App. No. 78256, 2002-Ohio-4024. Such reliance is both misplaced and unnecessary. The record in the case at bar provides sufficient evidence to affirm the lower court's decision on the sexual predator classification. I differ in the analysis the majority implicitly approves, however, when it quotes extensively regarding extraneous studies not reviewed by the trial court.
 {¶ 100} First, the majority observes that the "STATIC-99 test results are of practically no worth in predicting the risk of sexual recidivism." Ante p. 18. As authority for this statement, the majority cites to Ellison, supra, at ¶ 9. For support Ellison, in
 {¶ 101} turn, cites State v. Colpetzer, Cuyahoga App. No. 79983, 2002-Ohio-967. Colpetzer, however, does not provide any support for this claim. On the contrary, Colpetzer quotes Dr. Aronoff's testimony "that the STATIC-99 has a high level of reliability and validity." (Emphasis added.) As this quotation demonstrates, the Colpetzer opinion actually provides support for a position the opposite of what the majority maintained in Ellison.
 {¶ 102} In the case at bar, the majority then goes on to quote a seriously flawed conclusion from Ellison: "While actuarial risk assessments are said to outperform clinical risk assessments, actuarialassessments do not, and cannot, purport to make a prediction of aparticular offender's future conduct." (Emphasis in the original.) This time, Ellison makes no attempt to provide any authority for these statements.[4]
 {¶ 103} Moreover, the first part of this statement concedes what the second half contradicts, because the majority in Ellison makes a fundamental error as to what an actuarial assessment is. The only possible meaning of "outperform clinical risk assessments" in this context is the prediction of a person's reoffending. An actuarial assessment, as Dr. Aronoff explained, is an assessment based on the application of a formula to an individual's history. In Colpetzer, Dr. Aronoff testified that the STATIC-99 is "an actuarial instrument designed to estimate the probability of sexual recidivism among adult males who have been convicted of at least one sexual offense. The STATIC-99 evaluates historical data — such as the offender's prior sex offenses, sentencing dates, prior convictions for no-contact sexual offenses, various victim characteristics and the current age of the perpetrator — and then calculates the offender's recidivism risk in light of the data pursuant to a specified formula."
 {¶ 104} The risk assessed is, therefore, the individual`s risk of reoffending. Thus while conceding that actuarial assessments outperform clinical assessments on the risk, the Ellison opinion asserts they cannot and do not do this. I can only assume the majority in Ellison
misunderstood that an actuarial assessment, although using statistically-based formulas, begins with the offender's individual history and then predicts "a particular offender's future conduct." Because of this misunderstanding on the nature of the STATIC-99 instrument, Ellison erroneously concludes: "The STATIC-99 cannot purport to make an individualized assessment of future conduct * * *." On the contrary, as expert testimony in the Colpetzer opinion explained, this assessment is exactly what this tool purports to provide.
 {¶ 105} The majority in the case at bar further quotes from theEllison opinion a section which cites to the Supreme Court of Ohio opinion in State v. Eppinger (2001), 91 Ohio St.3d 158, 162, stating that "recidivism among pedophile offenders is highest. Some studies have estimated the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters." The context of this Supreme Court statement, however, is a discussion of the history of the sexual predator law; the opinion then proceeds to discuss whether the trial court is required to appoint an expert to determine the likelihood of recidivism. The statement did not occur in support of an actual determination that a particular person was a sexual predator or even in the discussion of a particular tool for prediction. We should be very careful, therefore, in applying this discussion to a different context.
 {¶ 106} Furthermore, there are more current studies on sexual recidivism rates. In Eppinger, the Supreme Court cited a 2000 San Diego Law Review article, which, in turn, cited a 1997 Law Human Behavior journal. A study from The Ohio Department of Rehabilitation and Correction, however, issued in November, 2000,[5] presented strikingly different data: "The ten year sexual recidivism rate for the group of sex offenders in this study was 11%. Rapists, or those who had adult victims, had the greatest chance of sexually recidivating, at 17.5%. Child molesters, both extrafamilial and incest, had a lesser chance of reincarceration for a sex related offense." A study such as this must make us question the received truths about pedophiles having a higher rate of reoffending with a sexual crime than adult rapists.[6] More importantly, it is not the role of the courts to arbitrate these studies, most certainly not when such studies are discussed for the first time in an appellate opinion.
 {¶ 107} It is misleading to claim, unqualifiedly, that statistical evidence supports the conclusion that child sex offenders have a high risk of recidivism. It is especially misleading to make this claim in an opinion reviewing whether a person is a sexual predator. For that reason, I concur in judgment only on the original two assignments of error.
[4] I note that the conclusory statement in the introductory subordinate clause, being in the passive voice, does not identify the speaker for "said." Nor does the majority subsequently tell us who said this.
[5] "Ten-Year Recidivism Follow-Up of 1989 Sex Offender Releases," Office of Policy Bureau of Planning and Evaluation.
[6] Eppinger cites one study as estimating "the rate of recidivism as being as high as fifty-two percent for rapists and seventy-two percent for child molesters." Eppinger does not, however, distinguish between recidivism for any crime and recidivism that is solely sexual, a distinction the Ohio study clearly draws. For purposes of classifying a sexual predator, this distinction is essential. Any extrapolation from the broader data must be carefully limited.